**In re Petition for DISCIPLINARY ACTION against Rebekah Mariya NETT, a Minnesota Attorney, Registration No. 299571.**

No. A12–1442.

Supreme Court of Minnesota.

Nov. 27, 2013.

Martin A. Cole, Director, Patrick R. Burns, First Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Zorislav R. Leyderman, Minneapolis, Minnesota, for respondent.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (Director) filed a petition for disciplinary action against respondent Rebekah Mariya Nett. The petition alleged that Nett violated Minn. R. Prof. Conduct 3.1,[1] 4.4(a),[2] 8.2(a),[3] 8.4(d),[4]

---

1. Minnesota Rule of Professional Conduct 3.1 prohibits a lawyer from asserting or defending a claim or contention that lacks a non-frivolous basis in law or fact.

2. Minnesota Rule of Professional Conduct 4.4(a) prohibits a lawyer from using means

with no substantial purpose other than to embarrass, delay, or burden a third person in relation to that lawyer's representation of a client.

3. Minnesota Rule of Professional Conduct 8.2(a) prohibits a lawyer from making a

and 8.4(g)[5] by engaging in a pattern of bad faith litigation, including making false and harassing statements toward judges and others involved in litigation against her clients. Nett answered the petition, but she did not accompany her attorney to the evidentiary hearing before the referee. Following the evidentiary hearing, the referee concluded that Nett had committed the alleged misconduct and recommended an indefinite suspension for a minimum of 6 months as the appropriate discipline. We conclude that the referee clearly erred when he considered Nett's lack of disciplinary history and cooperation with the disciplinary investigation as mitigating factors. We further conclude that the appropriate discipline for Nett's misconduct is an indefinite suspension from the practice of law with no right to petition for reinstatement for 9 months.

## I.

Nett was admitted to practice law in Minnesota in May 2000. She had no history of discipline before this matter. Nett's misconduct relates to 11 filings she made in 5 separate matters over the course of 17 months. All of her misconduct occurred in cases in which she represented the Dr. R. C. Samanta Roy Institute of Science and Technology, Inc. (SIST), or related commercial entities. The referee made the following findings related to Nett's misconduct, which neither party disputes.

*U.S. Acquisitions & Oil, Inc., SIST Matter*

In August 2010, Nett represented SIST and other related entities in a Wisconsin state court action. Nett sought removal to the United States District Court for the Eastern District of Wisconsin.[6] Nett filed several documents containing false accusations about judicial and other local officials, including a document contending that the judiciary and law enforcement had conspired with the mayor of Shawano, Wisconsin, against SIST. That filing also accused local Wisconsin state judges of being members of a secretive racist society, alleged that various judges had discriminated against SIST based on their common race and religion, and complained that courts follow no procedures and act as if there is no law. Nett accused the Chief Judge of the Eastern District of Wisconsin of granting opposing counsel's requests because the opposing counsel was the judge's former law clerk. Subsequent motions and pleadings by Nett contained similar allegations against the opposing party and the opposing party's counsel.

In October 2010, the federal district court sanctioned Nett, ordering her to pay the opposing party's attorney fees and other expenses incurred in bringing a motion for sanctions. In that order, the court

---

statement that he or she knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer, or public legal officer.

**4.** Minnesota Rule of Professional Conduct 8.4(d) prohibits a lawyer from engaging in conduct that is prejudicial to the administration of justice.

**5.** Minnesota Rule of Professional Conduct 8.4(g) prohibits a lawyer from harassing a person on the basis of sex, race, age, creed,

religion, color, national origin, disability, sexual orientation, or marital status in connection with that lawyer's professional activities.

**6.** Some of Nett's misconduct occurred in other states. Minnesota Rule of Professional Conduct 8.5(b) contains a choice of law provision that governs when we apply the rules of professional conduct of another jurisdiction in attorney discipline matters. Nett has not raised the applicability of Rule 8.5(b) or challenged the application of the Minnesota rules to her conduct. We, therefore, apply the Minnesota rules to Nett's conduct.

called Nett's statements "detailed, serious, [ ] bizarre[,] ... fantastic[,] and delusional," and pointed out that the allegations had "absolutely nothing to do with the merits of [the] lawsuit."

### D.S. Criminal Matter

In November 2010, Nett filed a brief in the Wisconsin Court of Appeals appealing D.S.'s conviction for violating a municipal ordinance. In the brief, Nett falsely asserted that the mayor of Shawano, Wisconsin, and other local officials have "positioned themselves against SIST's president," implying that they had done so because SIST's president is from India. In February 2011, the court affirmed D.S.'s conviction and directed Nett to pay a $200 sanction for filing a brief containing technical deficiencies and assertions in the statement of facts that had no support in the record. The court characterized Nett's assertions as "brazen" and "completely unsupported by the record."

### Midwest Amusement Park, LLC, Matter

In January 2011, Nett filed a brief as counsel for several SIST entities that were defendants in a lawsuit in the United States District Court for the Eastern District of Wisconsin. That brief falsely asserted that discrimination based on race, religion, and negative propaganda dictated the course of the litigation. The brief also compared the defendants' "experience of justice in the United States" to the " 'justice' Jews experienced under Hitler in Germany." The following month, the federal district court ordered Nett to show cause why she should not be sanctioned $5,000 for violating the Federal Rules of Civil Procedure by filing the offensive statements. In its order, the court called Nett's "gratuitous and continued attacks" on the court's ethics and impartiality "startling." The order also stated that "no reasonable attorney could suppose the [allegations] to have any merit whatsoever."

Nett responded to the order by hurling even more false allegations against the Eastern District's Chief Judge, including accusations that the judge was "standing first for his religion rather than the U.S. Constitution," that the United States District Court is "united under a common race and religion to rule against SIST," that the court engages in a grand scheme of discrimination, and that the court supports a political campaign against the defendants. Nett also claimed that the Chief Judge was "simply supporting his decision not to recuse himself" by entering a default judgment for the plaintiffs and directing Nett to show cause why she should not be sanctioned.

The court imposed a $5,000 sanction against Nett. It noted that Nett "would have been better to ignore [the] order to show cause than to respond to it." The court also stated that "[d]espite the seriousness of the charge," the defendants "have been able to muster only conclusory allegations of bias."

Nett appealed the $5,000 sanction, but the Seventh Circuit upheld it. Subsequently, the Seventh Circuit suspended Nett from the Seventh Circuit bar for her failure to pay the sanction on time. In light of her suspension from the Seventh Circuit, the United States District Court for the District of Minnesota automatically suspended Nett.

### Midwest Oil of Minnesota Bankruptcy Matter

Nett represented a SIST-related entity that initiated bankruptcy proceedings in Minnesota. In February 2011, Nett filed a motion asking the bankruptcy judge to recuse himself and for the removal of the attorney representing the United States trustee (who Nett misunderstood to be the

trustee himself). Along with the motion, Nett filed a memorandum of law containing false allegations that the attorney Nett believed to be the United States trustee and the bankruptcy judge were biased against her client. Among other improper statements, Nett's memorandum falsely stated that the judge is a religious bigot. In March 2011, the bankruptcy court issued an order denying the motions, stating "the motion and memorandum are unsupported by any factual record."

## Yehud–Monosson USA, Inc., Bankruptcy Matters

Nett also represented a SIST-related entity in bankruptcy proceedings that were transferred to the United States Bankruptcy Court for the District of Minnesota. Nett's filings and affidavits from the entity's president, which were attached to or incorporated into several of those filings, falsely accused the trustees and several bankruptcy judges of bias based on race and religion. One filing called one of the bankruptcy judges a "black robed bigot" and a "Catholic Knight Witch Hunter," the Chapter 7 trustee a "Jesuitess," another bankruptcy judge a "Jesuit," and the United States trustee a "priest's boy." The filing also asserted that "these dirty Catholics have conspired together to hurt Debtor."

During the course of the bankruptcy proceedings, the bankruptcy court found the entity's president in contempt based on her knowing and willful failure to comply with a turnover order. Around the same time, the bankruptcy court directed Nett to show cause why sanctions should not be imposed based on offensive statements she made in a memorandum. At the show cause hearing, the court found that Nett had not conducted a reasonable investigation of the facts before making specific statements and that she had violated the Federal Rules of Bankruptcy Procedure by making the false allegations. The court issued an order imposing a $5,000 sanction, enjoining Nett from filing any document referring to the religious beliefs (or lack thereof) of the court or of others, requiring Nett to attend legal ethics training, and referring her to the United States District Court for the District of Minnesota for possible removal from the roster of attorneys admitted to practice before that court.

Nett appealed the sanctions order to the United States District Court for the District of Minnesota. In May 2012, that court affirmed the sanctions order. At the time of the Director's appeal to this court, Nett had completed all of these requirements and had paid the $5,000 sanction. The record does not indicate, however, whether Nett has paid the sanctions imposed by the Wisconsin state and federal courts.

In his conclusions of law, the referee concluded that Nett violated the Minnesota Rules of Professional Conduct by repeatedly filing frivolous pleadings containing allegations about the qualifications of judges and others that were false and made with knowledge of their falsity or with reckless disregard as to their truth or falsity. The referee concluded that those statements served no substantial purpose other than to harass persons based on their race, creed, and religion. The referee also concluded that Nett's conduct was prejudicial to the administration of justice. The Director and Nett agree with the referee's determination that Nett violated the Minnesota Rules of Professional Conduct.

The referee identified four factors that aggravated Nett's professional misconduct: (1) Nett expressed no remorse for her misconduct; (2) Nett refused to attend the December 2012 evidentiary hearing before the referee in violation of Rule 25, Rules on Lawyers Professional

Responsibility (RLPR); (3) Nett engaged in a pattern of misconduct by repeating the same objectionable statements in multiple court proceedings in violation of multiple rules of professional conduct; and (4) Nett refused to acknowledge the wrongful nature of her misconduct. The referee also found four mitigating factors, concluding that: (1) Nett had no disciplinary record preceding the events giving rise to this disciplinary matter; (2) Nett fully participated in the Director's preliminary investigation; (3) Nett complied with all of the requirements of the bankruptcy court's January 4, 2012, order by paying the sanction and completing all of her ethics continuing legal education requirements; and (4) Nett committed all of the misconduct during her representation of only one client.

The referee recommended that Nett be suspended indefinitely for at least 6 months. Nett does not oppose the referee's findings of fact, conclusions of law, or recommendation for discipline. The Director argues that the referee erred in considering two of the mitigating factors and that a 6–month suspension is insufficient to deter Nett from engaging in future misconduct. The Director seeks to have Nett suspended for a minimum of 2 years.

## II.

When either party in a disciplinary case orders a transcript of the disciplinary hearing, the referee's findings of fact and conclusions of law are not conclusive and we are not bound by them. *See* Rule 14(e), RLPR; *In re Ulanowski*, 800 N.W.2d 785, 793 (Minn.2011). Here, the Director timely ordered a transcript. Accordingly, we review the referee's findings and conclusions for clear error. *In re Jones*, 834 N.W.2d 671, 677 (Minn.2013). We "will reverse only when the findings and conclusions are without evidentiary support in the record." *Id.*

While the "referee's recommendation for discipline carries great weight," we have "the ultimate responsibility for determining what discipline, if any, is appropriate." *In re Selmer*, 749 N.W.2d 30, 36 (Minn.2008) (citation omitted) (internal quotation marks omitted). We assess aggravating and mitigating circumstances when determining the appropriate sanction. *In re Rooney*, 709 N.W.2d 263, 270 (Minn.2006). We also look to similar cases for guidance as to the appropriate discipline, but we tailor the sanction to the specific facts of each case after considering aggravating and mitigating circumstances. *In re Lundeen*, 811 N.W.2d 602, 608 (Minn.2012).

Neither party challenges any of the referee's findings or conclusions with respect to Nett's acts of misconduct. Therefore, the only issue before us is the appropriate discipline to be imposed. The purpose of disciplinary sanctions for professional misconduct is "not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Rebeau*, 787 N.W.2d 168, 173 (Minn.2010). The four factors that guide our imposition of discipline are: (1) "the nature of the misconduct"; (2) "the cumulative weight of the disciplinary violations"; (3) "the harm to the public"; and (4) "the harm to the legal profession." *Lundeen*, 811 N.W.2d at 608.

While there have been no challenges to the misconduct or the aggravating factors found by the referee, the Director challenges the referee's findings that Nett's lack of disciplinary history and her initial cooperation with the disciplinary proceedings constitute mitigating factors. In doing so, the Director relies on our decisions

in *In re Aitken*, 787 N.W.2d 152, 162 (Minn.2010) ("[A]n attorney's lack of disciplinary history is not a mitigating factor but is instead the absence of an aggravating factor."), and *In re Farley*, 771 N.W.2d 857, 862 (Minn.2009) (concluding that cooperation with the proceedings is required of every attorney and may not be considered a mitigating factor).

The Director is correct that we have held that the lack of a disciplinary history and cooperation with the Director's investigation do not constitute mitigating circumstances. *Aitken*, 787 N.W.2d at 162; *Farley*, 771 N.W.2d at 862. Therefore, with respect to those findings by the referee, the referee erred. It was also error, as the Director argues, for the referee to rely on those factors in determining the discipline to be imposed.

The Director cites five cases to support his contention that a minimum 2–year suspension is the appropriate sanction rather than the 6–month minimum recommended by the referee. Those cases are: *In re Nathan*, 671 N.W.2d 578 (Minn.2003); *In re Pinotti*, 585 N.W.2d 55 (Minn.1998); *In re Selmer*, 568 N.W.2d 702 (Minn.1997); *In re Jensen*, 542 N.W.2d 627 (Minn.1996); and *In re Graham*, 453 N.W.2d 313 (Minn. 1990). In those cases, we imposed sanctions ranging from 60 days to 18 months. While those cases involved lawyers who engaged in harassing conduct or filed frivolous claims, none of the cases involved conduct or statements by an attorney that had no substantial purpose other than to harass judicial officers, public officials, opposing counsel, and others based on race, creed, and religion. At the same time, each of the cases relied on by the Director involved attorneys who engaged in additional misconduct beyond harassing conduct and frivolous claims. Thus, while helpful, the cases relied on by the Director do not provide clear guidance as to the discipline to be imposed on the facts presented here.

We conclude that the nature of Nett's misconduct warrants a serious disciplinary sanction. Nett engaged in numerous acts of misconduct over a substantial period of time. Nett repeatedly made frivolous and harassing personal attacks and discriminatory statements in 11 different pleadings in five distinct matters. She filed those pleadings in six tribunals over the course of 17 months. She also continued to make false statements about members of the judiciary and others after being sanctioned for the same conduct.

Nett's misconduct substantially harmed the public and the legal profession by prolonging and delaying proceedings and "caus[ing] needless expenditure of judicial and opposing counsel resources." *In re Nathanson*, 812 N.W.2d 70, 79 (Minn. 2012). The nature of the misconduct, which involved repeated false statements made in judicial proceedings, also cast the legal profession in a negative light and harmed the public. *See In re Houge*, 764 N.W.2d 328, 338 (Minn.2009) ("A lawyer's duty of candor to the court goes to the core of preserving the soundness of the judicial system."). In addition, Nett's "failure to follow court rules undermines public confidence in the legal system." *In re Murrin*, 821 N.W.2d 195, 208 (Minn. 2012).

Based on the record presented, we conclude that Nett's misconduct warrants a suspension greater than the referee's recommended 6–month suspension but less than the 2–year suspension urged by the Director. We conclude that an indefinite suspension with no right to petition for reinstatement for 9 months is the appropriate discipline based on the specific facts of this case.

Accordingly, we order that:

1. Respondent Rebekah Mariya Nett is indefinitely suspended from the practice of law, effective 14 days from the date of the filing of this opinion, with no right to petition for reinstatement for a minimum of 9 months from the date of the filing of this opinion.

2. Respondent may petition for reinstatement pursuant to Rule 18(a)–(d), RLPR. Reinstatement is conditioned on successful completion of the professional responsibility portion of the state bar examination and satisfaction of continuing legal education requirements, pursuant to Rule 18(e), RLPR.

3. Respondent shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).

4. Respondent shall pay $900 in costs pursuant to Rule 24, RLPR.

Suspended.

STRAS, J., took no part in the consideration or decision of this case.