# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP495-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Naomi Dawn Isaacson, Attorney at Law: <br><br> Office of Lawyer Regulation, <br>       Complainant, <br>   v. <br> Naomi Dawn Isaacson, <br>       Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST ISAACSON

| | |
|---|---|
| OPINION FILED: | March 20, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

| | |
|---|---|
| ATTORNEYS: | |

**2015 WI 33**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2014AP495-D

STATE OF WISCONSIN : IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Naomi Dawn Isaacson, Attorney at Law:**

**Office of Lawyer Regulation,**

        Complainant,

    v.

**Naomi Dawn Isaacson,**

        Respondent.

**FILED**

MAR 20, 2015

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. We review a report filed by referee James G. Curtis, recommending that this court suspend the Wisconsin law license of Attorney Naomi Dawn Isaacson for one year for professional misconduct consisting of engaging in a pattern of bad faith litigation, including making false and harassing statements toward judges and others involved in litigation, and then failing to cooperate with the Office of Lawyer Regulation (OLR). The referee further recommended that

Attorney Isaacson pay the full costs of this proceeding, which are $6,634.96 as of December 23, 2014.

¶2 No appeal has been filed, so we review this matter pursuant to Supreme Court Rule (SCR) 22.17(2).[1] We adopt the referee's findings of fact and conclusions of law and agree that a one-year suspension is sufficient discipline for Attorney Isaacson's misconduct. We further agree that Attorney Isaacson should pay the full costs of this disciplinary proceeding.[2]

¶3 Attorney Isaacson was admitted to the practice of law in Minnesota in May 1999. She was admitted to the practice of law in Wisconsin in September 2000. Her Wisconsin law license has been suspended since May 2011 for noncooperation with the OLR's investigation. She was also suspended for nonpayment of Wisconsin State Bar dues and failure to provide trust account certification, effective October 2012, and for failure to comply with mandatory continuing legal education requirements, effective June 2014. Her license remains suspended.

---

[1] SCR 22.17(2) states:

> If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

[2] The referee explicitly noted that the fact that he recommended dismissal of Count Three has no relevance on the costs issue. We agree.

2

¶4 On March 5, 2014, the OLR filed a complaint against Attorney Isaacson alleging four counts of professional misconduct. James Curtis was appointed referee. Attorney Isaacson never filed an answer and did not appear in the action. The OLR filed a motion for default judgment on August 6, 2014. The record reflects that, despite multiple and extensive efforts to provide Attorney Isaacson with notice of the default hearing, all efforts to contact Attorney Isaacson were unsuccessful.

¶5 The referee found that Attorney Isaacson was properly served with an authenticated copy of the complaint and order to answer pursuant to the provisions of SCR 22.13(1), ruled that all of the allegations of the complaint were deemed established to the standard of clear, satisfactory, and convincing evidence, and granted the OLR's motion for default judgment on October 20, 2014.[3] On November 24, 2014, the referee filed a report and recommendation addressing sanctions.

---

[3] The referee noted the need for one clarification of the OLR's complaint, as outlined in his report and recommendation. The complaint alleged that on January 3, 2012, a Minnesota bankruptcy judge issued a bench warrant for Attorney Isaacson's arrest and alleged, further, that a warrant, on information and belief, remains active. The OLR later advised the referee that the bankruptcy case was concluded without further involvement by Attorney Isaacson and, in closing the case, the presiding judge quashed the warrant over the objection of the bankruptcy trustee and the U.S. Trustee's Office.

¶6    The disciplinary complaint alleges violations of both the Wisconsin Rules of Professional Conduct for Attorneys and the Minnesota Rules of Professional Conduct (MRPC).[4]

¶7    First, we note that Attorney Isaacson is not alleged to have acted as an attorney in this disciplinary proceeding. Rather, she is a licensed Wisconsin attorney who engaged in misconduct while serving in the capacity as an officer or managing member of a corporate entity and its subsidiaries. Specifically, Attorney Isaacson was the Chief Executive Officer of Dr. R. C. Samanta Roy Institute of Science and Technology, Inc., known as "SIST," together with its wholly owned subsidiaries and limited liability companies.[5] The complaint identifies several somewhat interrelated litigation proceedings

---

[4] SCR 20:8.5 contains a choice of law provision that governs when the court applies the rules of professional conduct of another jurisdiction in attorney discipline matters. For conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits are applied. SCR 20:8.5(b)(1). The misconduct alleged herein occurred in connection with matters pending before tribunals in both Minnesota and Wisconsin, so the rules of both jurisdictions apply.

[5] These entities include: U.S. Acquisitions & Oil, Inc. ("USAO"); Midwest Oil of Wisconsin, LLC; Midwest Oil of Shawano, LLC; Midwest Oil of Minnesota, LLC; and Midwest Properties of Shawano, LLC. Attorney Isaacson has described her roles as "President" of USAO and "Managing Member" of the subsidiary LLCs and others, including Midwest Amusement Park, LLC and Midwest Oil of Anoka, LLC. She has also identified herself as the President of Yehud-Monosson USA, Inc. Attorney Rebekah Mariya Nett acted as counsel of record for SIST and its subsidiaries in various litigation cases in which Attorney Isaacson was a corporate representative.

in which Attorney Isaacson participated. She prepared and signed affidavits, declarations, or responses in these matters which were filed on her behalf. The core of the complaint is that Attorney Isaacson's statements in these documents had no apparent purpose other than to harass judicial officers, public officials, opposing counsel, and others based on race, creed, and religion.

¶8 As the referee observed, it is difficult to summarize the verbose and grandiose allegations leveled by Attorney Isaacson against the courts generally, specific judges, other counsel, appointed officers, and third parties. The OLR's complaint contains over 70 paragraphs providing detailed context for and quoting from specific sworn and verified statements she made in court filings. A few examples must suffice to convey the nature of Attorney Isaacson's statements.

¶9 Some of the entities with which Attorney Isaacson is affiliated were involved in a public amusement go—cart track business in Shawano, Wisconsin. In the mid—2000s, creditors of the go—cart track business alleged default and brought claims against various corporate entities. In 2009, USAO and SIST filed for Chapter 11 bankruptcy protection in the U.S. Bankruptcy Court for the District of Delaware. The cases were administered together with the simultaneous bankruptcy filings of five other wholly owned subsidiaries of SIST. On September 22, 2009, these bankruptcy proceedings were dismissed.

¶10 On May 28, 2010, one of the aforementioned creditors, Southwest Guaranty, Ltd., successfully moved to reopen

5

proceedings in Shawano County, Wisconsin. On July 13, 2010, Midwest Properties of Shawano, LLC filed for Chapter 11 bankruptcy. In re Midwest Properties of Shawano, LLC, Case No. 10-31515 (Bankr. E.D. Wis.).

¶11 On July 16, 2010, Attorney Isaacson drafted and signed a sworn affidavit filed in the Midwest Properties bankruptcy case. Attorney Isaacson's affidavit stated, inter alia, that the Shawano Mayor "has wrapped her tentacles around the judiciary system including Shawano Municipal judges, Shawano County judges, Wisconsin Appellate Court judges, the Federal District Court judge in Green Bay, Seventh Circuit Appellate Court judges, and even [the U.S. Bankruptcy Court Judge in Delaware]."

¶12 On August 15, 2010, Attorney Isaacson personally prepared and signed a declaration that was filed in Southwest Guaranty, Ltd. v. U.S. Acquisitions & Oil, Inc., et al., Case No. 10-CV-596 (E.D. Wis.). In that declaration, she stated that "Shawano is Neo-Nazi territory where it is believed people of other races and religions have no right to life," and referred to the "underlying White Supremacist feelings and beliefs and Jim Crow mentality held by many persons in Shawano." She declared that the "[d]efendant's experience of 'justice' in Shawano is comparable to the 'justice' Jews experienced under Hitler's regime."

¶13 On October 12, 2010, in a written order and decision, the U.S. District Court remanded the USAO case to the Shawano County Circuit Court and agreed to impose sanctions for what the

6

court described as "a number of inflammatory and irrelevant allegations regarding Southwest Guaranty, their counsel, and various members of the Shawano community." The court observed that "inexplicably" the matter "includes a number of detailed, serious, and bizarre allegations in the footnotes about certain members of the Shawano community, including judges, city officials, and the mayor of Shawano." The court observed that "[t]he objectionable allegations are so fantastic and delusional that no reasonable attorney would certify that they have evidentiary support."

¶14 Attorney Isaacson was also involved with bankruptcy proceedings pending in Minnesota and similar documents were filed in those proceedings. On August 17, 2010, Attorney Isaacson signed a declaration filed in In re Midwest Oil of Minnesota, LLC, Case No. 10—35450 (Bankr. D. Minn.), in which she stated that "[the Shawano Mayor] is involved in sending her cultic missionaries to other lands to destroy the family values, heritages, and cultures that have preserved peoples of other civilizations for thousands of years" and declared that the mayor "is a member of the most dangerous, dirtiest, and deadliest death cult in human history and is a descendent of Martin Luther and Hitler who started and propagated the Lutheran cult." Attorney Isaacson also referred to the bankruptcy trustee as "a visceral racist," an "ignoramus," and "a member of this most dangerous, dirtiest, and deadliest death cult in human history as well."

7

¶15 On August 18, 2010, at a hearing on the trustee's motion to dismiss the Midwest Oil case, the presiding bankruptcy judge commented on the pleadings, which included an Attorney Isaacson document, "which in my time on the bench are among the worst and most scurrlious [sic], defamatory pleadings I have ever seen from a lawyer."

¶16 On March 23, 2011, Yehud—Monosson USA, Inc. filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Southern District of New York, Case No. 11-11278. On April 12, 2011, Attorney Isaacson drafted and signed a sworn affidavit in which she averred that "[t]rying a matter in Minnesota is like sending the Jews back to Germany during the Holocaust."

¶17 On April 13, 2011, over the debtor's objections, the Yehud-Monosson bankruptcy was transferred from New York to Minnesota and converted to a Chapter 7 proceeding. On October 19, 2011, Attorney Isaacson signed a sworn affidavit that was filed with the court in which she stated that the bankruptcy trustee was making false, defamatory, scandalous, and misleading statements to the court. Eventually, contempt proceedings were brought against Attorney Isaacson, and on November 10, 2011, Attorney Isaacson swore to and signed an affidavit in which she claimed that the trustee "lied to the court" and "persisted in her perjurious conduct," and stated that "[o]bviously, like her dirty bible, [the trustee] is full of lies and deceit."

¶18 Attorney Isaacson made reference to trustees, variously, as a "dirty Catholic inquisitor," a "Jesuitess," and

8

a "priest's boy," and referred to various judges as a "black-robed bigot," a "Jesuit judge," and a "Catholic Knight Witch Hunter." She stated that court systems, "particularly the Bankruptcy Court in Minnesota, are composed of a bunch of ignoramus, bigoted Catholic beasts that carry the sword of the church."

¶19 At an ensuing hearing on November 29, 2011, the presiding judge described Attorney Isaacson's language as "irresponsible, unprofessional and unbelievably and unmitigatingly outrageous".

¶20 Attorney Isaacson responded with a second declaration in which she repeated similar rhetoric and referred to the Chapter 7 trustee as the court's "Inquisitor." Then, on December 30, 2011, Attorney Isaacson signed a 17—page "response" in which she expressly asserted that all her statements as quoted by the court were true and accurate and not made for any improper purpose. She referred to the first bankruptcy judge to hear the case in Minnesota as "an avowed Jesuit," "the dirty Jesuit," a "dastardly Jesuit," and "a Jesuit working undercover." Attorney Isaacson's "response" also included statements such as "out of personal malice, [the court] has issued this Order to Show Cause and warrant for my arrest," and "[s]ince the unfortunate day that [the trustee] was appointed, she has been a Jesuitess, meaning a zealous advocate of her bigoted catholic White Supremacy beliefs."

¶21 Eventually, Attorney Isaacson was held in contempt for failing to comply with the orders to turn over documents and

9

information and for her failures to appear on before the court. The U.S. Bankruptcy Court issued an order for sanctions against Attorney Isaacson "for each of the sanctionable statements identified in the court's order to show cause." Attorney Isaacson appealed and the Eighth Circuit Court of Appeals affirmed. Isaacson v. Manty, 721 F.3d 533 (8th Cir. 2013).

¶22 The referee concluded, as to Count One, that the undisputed allegations of the complaint establish clear, satisfactory, and convincing evidence that:

> By making unfounded, scurrilous, vilifying statements and religious slurs directed against the courts generally, and against specific judges, other counsel, appointed officers and third parties, in a series of 12 documents she signed or created during July and August 2010, April 2011, and between October and December 2011, and which were filed in cases before various federal courts in Wisconsin, Minnesota and New York, [Attorney] Isaacson violated SCR 20:8.2(a),[6] SCR 20:8.4(g),[7] SCR 40.15[8] and

---

[6] SCR 20:8.2(a) provides that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office."

[7] SCR 20:8.4(g) provides that it is professional misconduct for a lawyer to "violate the attorney's oath."

[8] SCR 40.15 is the Attorney's Oath, and provides, in pertinent part: "I will maintain the respect due to courts of justice and judicial officers."

10

SCR 20:8.4(i),[9] and [MRPC] Rule 3.1,[10] Rule 4.4(a),[11] Rule 8.2(a),[12] Rule 8.4(d)[13] and Rule 8.4(g).[14]

---

[9] SCR 20:8.4(i) provides that it is professional misconduct for a lawyer to "harass a person on the basis of sex, race, age, creed, religion, color, national origin, disability, sexual preference or marital status in connection with the lawyer's professional activities. Legitimate advocacy respecting the foregoing factors does not violate par. (i)."

[10] MRPC Rule 3.1 provides:

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law. A lawyer for a defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

[11] MRPC Rule 4.4(a) provides that "[i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person."

[12] MRPC Rule 8.2(a) provides that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer, or public legal officer, or of a candidate for election or appointment to judicial or legal office."

[13] MRPC Rule 8.4(d) provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice."

[14] MRPC Rule 8.4(g) provides that it is professional misconduct for a lawyer to "harass a person on the basis of sex, race, age, creed, religion, color, national origin, disability, sexual orientation, or marital status in connection with a lawyer's professional activities."

11

¶23 The referee further concluded, as to Count Two, that "[b]y inserting offensive language that violated the Minnesota Rules of Professional Conduct into a draft memorandum supporting a motion, and directing another counsel to file the altered pleading with the U.S. Bankruptcy Court (D. Minn.) on November 25, 2011, [Attorney] Isaacson violated MRPC Rule 20:8.4(a)."[15]

¶24 The referee recommended that the court dismiss Count Three of the OLR's complaint. The OLR alleged that Attorney Isaacson had stated in three affidavits or declarations, filed in the U.S. District Court, Bankruptcy Court for the Eastern District of Wisconsin, and the U.S. Bankruptcy Court for the District of Minnesota, that a Shawano County circuit court judge had appointed a receiver in an ex parte hearing while knowingly failing to disclose that she had previously signed loan papers that expressly consented to the appointment of a receiver without any notice. The OLR asserted that this conduct violated SCR 20:3.3(a)(1),[16] SCR 20:8.4(c),[17] MRPC Rule 3.3(a)(1),[18] and MRPC Rule 8.4(c).[19]

---

[15] MRPC Rule 8.4(a) provides that it is professional misconduct for a lawyer to "violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another."

[16] SCR 20:3.3(a)(1) provides that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

[17] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

12

¶25 The referee concluded that the allegations of the complaint, alone, were insufficient to establish that Attorney Isaacson knowingly failed to disclose that she had expressly consented to the appointment of a receiver without notice. The referee therefore recommended dismissal of Count Three. The OLR has not appealed this recommendation. We accept the recommendation and dismiss Count Three.

¶26 Finally, the OLR alleged in Count Four of the complaint that Attorney Isaacson failed to cooperate with the OLR's investigation into this matter. The referee concluded that:

> By failing to timely respond to OLR's initial investigative inquiry, by belatedly providing a reply that did not fully and fairly respond to OLR's questions and failed to include supporting evidence as requested, and by subsequently submitting approximately 3,000 photos and 4,000 pages of newspaper clippings and miscellaneous documents having no discernible substantial relevance to OLR's inquiries, [Attorney] Isaacson violated SCR 22.03(2)[20]

---

[18] MRPC Rule 3.3(a)(1) provides that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal, or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

[19] MRPC Rule 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

[20] SCR 22.03(2) provides:

> Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts

(continued)

and SCR 22.03(6),[21] which are enforced via SCR 20:8.4(h).[22]

¶27 The record supports the referee's findings of fact and conclusions of law. They are unchallenged and this court adopts them.

¶28 With respect to the discipline to be imposed, we determine the appropriate level of discipline given the particular facts of each case, independent of the referee's recommendation, but benefitting from it. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶29 The OLR sought revocation of Attorney Isaacson's license to practice law in Wisconsin. The referee recommends

---

and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

[21] SCR 22.03(6) provides that "[i]n the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[22] SCR 20:8.4(h) provides that it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

14

that this court suspend Attorney Isaacson for one year. The OLR has not appealed that recommendation.

¶30 The referee was mindful that Attorney Isaacson's misconduct certainly displays aggravating circumstances. She engaged in a pattern of intentional misconduct in multiple tribunals over a period of at least 17 months. Continuing the offensive conduct after being sanctioned by the courts shows a lack of remorse. Indeed, the referee observed that Attorney Isaacson's "conduct displayed an utter disregard and disrespect for the integrity of the courts and their judges in a brazen and outrageous fashion."

¶31 The referee was strongly influenced, however, by an opinion of the Minnesota Supreme Court in In re Disciplinary Action Against Nett, 839 N.W.2d 716 (Minn. 2013). Attorney Nett was counsel of record for SIST and its related entities in a number of the same cases involving Attorney Isaacson. She was licensed to practice law in both Minnesota and Wisconsin.[23] The Minnesota court imposed discipline for conduct that was substantially similar to Attorney Isaacson's conduct, namely, engaging in a pattern of bad faith litigation, including making false and harassing statements towards judges and others involved in the litigation. The Minnesota Supreme Court ultimately determined that Attorney Nett's misconduct warranted an indefinite suspension with no right to petition for

---

[23] Attorney Nett was counsel of record in the matters described herein.

15

reinstatement for nine months. Id. Attorney Nett was also licensed in Wisconsin and the OLR filed a complaint with this court seeking reciprocal discipline identical to that imposed by the Minnesota Supreme Court. Attorney Nett did not contest the OLR's complaint. This court imposed reciprocal discipline, concluding that a comparable suspension here, factoring in procedural and timing considerations, would be one year. In re Disciplinary Proceedings Against Nett, 2014 WI 106, 358 Wis. 2d 300, 852 N.W.2d 486.

¶32 The referee observed that the cases cited by the OLR in support of revocation were of limited guidance because, while they involved lawyers who engaged in harassing conduct or filed frivolous claims, they were distinguishable because other misconduct was also involved and because none involved an attorney who had no substantial purpose other than harassment.

¶33 We agree that Attorney Isaacson's misconduct warrants a one-year suspension of her license to practice law in Wisconsin. She repeatedly made frivolous and harassing personal attacks and discriminatory statements in numerous documents filed in various matters. She continued to make false statements about members of the judiciary and others after being formally sanctioned for her conduct. Based on the record presented, we are satisfied that a one-year suspension is sufficient in view of the seriousness of her professional misconduct and will serve to deter similar behavior and protect the public from similar misconduct in the future.

16

¶34 The referee further recommended that Attorney Isaacson be required to pay all costs of the disciplinary proceeding, which total $6,634.96 as of December 23, 2014. There is no claim that the costs requested by the OLR are excessive or unreasonable, and we order Attorney Isaacson to pay the costs of this proceeding, as recommended by the referee.

¶35 No restitution was sought and none is ordered in this proceeding.

¶36 IT IS ORDERED that Naomi Dawn Isaacson's license to practice law in Wisconsin is suspended for one year, effective the date of this order.

¶37 IT IS FURTHER ORDERED that within 60 days of the date of this order, Naomi Dawn Isaacson shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶38 IT IS FURTHER ORDERED that to the extent she has not already done so, Naomi Dawn Isaacson shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

17