In re Petition for DISCIPLINARY AC-
TION AGAINST Christopher Thomas
KALLA, a Minnesota Attorney, Regis-
tration No. 0325818.

No. A10–1906.

Supreme Court of Minnesota.

Jan. 25, 2012.

Martin A. Cole, Director, Julie E. Bennett, Senior Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, MN, for petitioner.

Christopher Kalla, St. Louis Park, MN, pro se.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (OLPR) served and filed a petition for discipline in September 2010 alleging that Christopher Kalla engaged in a conflict of interest prohibited by the Minnesota Rules of Professional Conduct. Following a hearing, a referee concluded that Kalla had engaged in a conflict of interest as alleged, and recommended that Kalla be publicly reprimanded and receive supervised probation for two years. We conclude that the referee's findings are not clearly erroneous and publicly reprimand Kalla and order that he serve supervised probation for two years.

Kalla was admitted to the practice of law in Minnesota in 2003. He has no previous disciplinary history. The conflict of interest at issue arose from Kalla's representation of two clients, whom we refer to in the opinion as "Client A" and "Client B."

In 2006, Client A borrowed money from an individual lender ("the Lender") to use as a down payment for the purchase of a home. The loan was secured by a mortgage on the real property. The mortgage was arranged by Future Mortgage, a company owned by Client B. Client B, who was also a real estate agent, assisted Client A with the purchase of her home and connected Client A to the Lender. When Client A later tried to refinance her loans, her mortgage broker identified potential legal problems with the Lender's loan and referred Client A to Kalla for legal assistance.

Kalla reviewed Client A's loan from the Lender and reached the conclusion that the loan was usurious. In October 2007, Kalla filed a lawsuit on Client A's behalf, seeking to invalidate the loan and mortgage between Client A and the Lender. During his investigation of Client A's claim, Kalla discovered that Client B had also borrowed money from the Lender and

advised Client B about the potential usury issues with the Lender's loans.

The Lender filed an answer and counterclaim to the lawsuit, in which he identified Future Mortgage as the broker of his loan to Client A. The answer and counterclaim therefore identified Client B and Future Mortgage as key players in the lawsuit. Thereafter, Kalla undertook representation of Client B, filing a usury lawsuit on behalf of Client B against the Lender on December 21, 2007. Kalla did not inform Client B before he undertook her representation that Client B or her company, Future Mortgage, were in any way implicated in Client A's lawsuit.

In February 2008, the Lender filed a third-party complaint in Client A's lawsuit naming Client B and Future Mortgage as defendants. The third-party complaint alleged that Future Mortgage and Client B were obligated to the Lender for contribution and indemnity because they drafted the note and mortgage between the Lender and Client A. Prior to serving the third-party complaint, the Lender's attorney, Joseph Kantor, talked to Kalla about the problem for Kalla in representing both Clients A and B, who would be on opposing sides of the case after the third-party complaint was served. After receiving the Lender's third-party complaint, Kalla asked both clients to sign conflict-of-interest waivers. Client A signed the waiver but Client B did not. Kalla continued to represent both clients without a signed conflict-of-interest waiver from Client B.

Later in February 2008, the Lender brought a motion to disqualify Kalla in the lawsuit based on the belief that Kalla was engaging in a conflict of interest by representing both Clients A and B. On March 28, 2008, Kalla withdrew from representing Client B, but continued to represent Client A. Kalla did not obtain consent from Client B, as a former client, to continue to represent Client A.

Chanel Melin took over as Client B's attorney when Kalla withdrew. In June 2008, Melin had a conversation with Kalla in which Kalla expressed a willingness to use information against Client B obtained during his representation of Client B in Client A's lawsuit. Based on this conversation, Melin believed Kalla's continued representation of Client A was a conflict of interest with Client B. Thus, Melin joined the Lender's motion to disqualify Kalla. On June 27, 2008, the district court issued an order disqualifying Kalla from continued representation of Client A based on the conflict of interest between Clients A and B.

The district court stayed the order to disqualify for ten days to allow Kalla to obtain a written waiver of the conflict from Client B. When Kalla did not obtain a written waiver, the court issued a second order disqualifying Kalla from representation. The court stated that there was a "substantial, relevant relationship and overlap between the subject matters of the two representations" of the two clients. The court concluded it was "abundantly clear" that Rule 1.9[1] required a waiver from Client B as a former client before Kalla could continue to represent Client A. The court noted that Kalla obtained confidential information from Client B during his representation, that "Rule 1.9 [exists] to prevent the use of former client confidences in a pending manner," and that

---

1. The Rule states:
 (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
 Minn. R. Prof. Conduct 1.9(a).

there were "valid and serious concerns" about Kalla using information against Client B. Client B then filed a complaint against Kalla with the OLPR in August of 2008.

Kalla appealed the district court's disqualification order. The court of appeals affirmed the order in an unpublished opinion on June 16, 2009. The court of appeals found that the interests of Kalla's current client (A) and former client (B) were materially adverse. The court noted that the Lender's counterclaims "pitted [Client B's] financial interests directly against those of [Client A]."

On September 29, 2010, the Director filed a petition for disciplinary action against Kalla.[2] Kalla challenged the petition for disciplinary action, and the matter came before the referee on February 18, 2011, at which Kalla, Client B, Melin, and Kantor testified. The referee made the following findings. Client B was involved with Client A's loans as her real estate agent and through Future Mortgage. Kalla undertook representation of Client A regarding her loan and, in the process of investigating the claim, Kalla discovered that Client B had a similar loan from the Lender. Kalla undertook representation of Client B in a usury lawsuit against the Lender. Kalla knew Client B and Future Mortgage were implicated in Client A's lawsuit but failed to advise Client B that she and Future Mortgage were implicated in the lawsuit before he undertook repre-

sentation. The Lender's attorney discussed Kalla's potential conflict with Kalla before serving the third-party complaint. After receiving the third-party complaint, Kalla sought conflict waivers from both clients but received only a conflict waiver from Client A. Kalla continued to represent both clients after receiving the third-party complaint naming Client B as a defendant in Client A's lawsuit. Kalla withdrew from representing Client B after the Lender brought a motion to disqualify Kalla. Kalla thereafter continued to represent Client A without informed consent from Client B. Chanel Melin believed that Kalla expressed a willingness to use information obtained from Client B against Client B in Client A's lawsuit. Finally, the referee found that Kalla lacked insight into his misconduct, took no responsibility for his misconduct, and exhibited little or no remorse for his misconduct.

The referee concluded that Kalla's simultaneous representation of Clients A and B violated Minn. R. Prof. Conduct 1.7(a)[3] and that Kalla's continued representation of Client A after withdrawing from representation of Client B violated Minn. R. Prof. Conduct 1.9(a). Kalla contested the findings, conclusions, and recommendation, arguing that twenty of the referee's findings of fact were not supported by clear and convincing evidence, that the interests of the two clients were neither directly adverse nor was his repre-

---

**2.** The record does not reflect why there was a delay of 15 months between the court of appeals ruling and the filing of the petition. At oral argument, counsel for OLPR indicated that the time lag was in some part due to the ongoing nature of the investigation as well as the OLPR's heavy caseloads.

**3.** The Rule states:
(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent con-

flict of interest. A concurrent conflict of interest exists if:
(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person, or by a personal interest of the lawyer.
Minn. R. Prof. Conduct 1.7(a).

sentation of one materially limited by the other, and that the referee did not recommend the appropriate level of discipline because a private admonition would have been more appropriate.

■■■ Attorney misconduct must be proven by "full, clear, and convincing evidence." *See In re Gillard*, 271 N.W.2d 785, 805 n. 3 (Minn.1978). This standard is met where the "truth of the facts asserted is highly probable." *In re Miera*, 426 N.W.2d 850, 853 (Minn.1988) (internal quotation marks omitted). When a hearing transcript is ordered, the referee's findings are not conclusive and are subject to review on the record. *See In re Moeller*, 582 N.W.2d 554, 556 (Minn.1998). We will not set aside the referee's findings of fact unless they are clearly erroneous. *In re Stanbury*, 614 N.W.2d 209, 213 (Minn. 2000). To find that a referee's findings were clearly erroneous, we must be "left with the definite and firm conviction that a mistake has been made." *In re Wentzell*, 656 N.W.2d 402, 405 (Minn.2003). The referee's findings are given great deference. *In re Barta*, 461 N.W.2d 382, 382 (Minn.1990).

### I.

Kalla disputes numerous factual findings. Kalla disputes some findings on the ground that they are irrelevant or immaterial. For instance, Kalla disputes findings relating to his current and past employers and findings relating to the disqualification orders. All of these findings are adequately supported by the record. Kalla's assertion that they are somehow irrelevant to the disciplinary proceedings has no bearing on their accuracy.

■■■ Kalla disputes three findings that relate to his willingness to use information obtained from representing Client B against Client B. Chanel Melin testified that Kalla told her he might use informa-

tion against Client B. Kalla disputed ever telling Melin that he would use client confidences from Client B against her. The referee is in the best position to evaluate the veracity of these claims, and we give great deference to referee findings that rest on disputed testimony. *In re Barta*, 461 N.W.2d at 382. Here, there is support in the record for the referee's finding that Kalla was willing to use or reveal confidential information about Client B. Because these findings have support in the record, we conclude they are not clearly erroneous.

■■■ Kalla also disputes the referee's findings that he lacks insight into his own misconduct, fails to take responsibility, and exhibits little or no remorse. This court gives great deference to referee determinations of a respondent's credibility, demeanor, or sincerity. *Id.* at 382. In this case, the record supports the referee's conclusion that Kalla failed to recognize any conflict of interest in his representation of Clients A and B, even after the conflict had been confirmed by two courts. The referee was in the best position to evaluate Kalla's demeanor and sincerity.

In sum, we conclude that all of the disputed findings have support in the record and are not clearly erroneous.

In briefs and at oral argument, Kalla persists in arguing that he did not engage in a conflict of interest by representing Clients A and B simultaneously, or by continuing to represent Client A after withdrawing from representation of Client B. Kalla argues that there was no conflict of interest because the clients' interests were neither directly adverse nor was he materially limited in his representation of either client. We disagree. By representing clients on opposing sides of a lawsuit, one of whom was potentially liable for contribution based on the other's claim,

Kalla engaged in a concurrent conflict of interest without getting consent from both clients.

■ Minnesota Rule of Professional Conduct 1.7(a) prohibits concurrent conflicts of interest. The rule explains that concurrent conflicts can arise in two situations. The first is when "the representation of one client will be directly adverse to another client." Minn. R. Prof. Conduct 1.7(a)(1). The second is when "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person, or by a personal interest of the lawyer." Minn. R. Prof. Conduct 1.7(a)(2). We need not decide whether representing a plaintiff and a third-party defendant in the same lawsuit presents a situation of direct adversity because we hold that Kalla's representation of Clients A and B posed a significant risk that the dual representation would materially limit his representation of each client in violation of Rule 1.7(a)(2).

Kalla was representing Client A, the plaintiff in a usury lawsuit, at the same time he was representing Client B, a third-party defendant in the same lawsuit. Client B was brought into the litigation by the Lender, who claimed Client B and Future Mortgage were liable for contribution and indemnity. This put Kalla in a situation where advocating for Client A would potentially harm Client B, who was potentially liable for contribution. Kalla's ability to fully advocate for both clients was materially limited by Kalla's dual representation. This concurrent conflict of interest was technically waivable under subpart (b) of Rule 1.7.[4] However, waiver only excuses the conflict if "each affected client gives informed consent, confirmed in writing." Minn. R. Prof. Conduct 1.7(b)(4). Kalla never obtained written consent from Client B to represent both clients; thus the conflict was not waived. Therefore, Kalla's representation of Clients A and B without Client B's informed consent violated Rule 1.7(a)(2).

■ Kalla continued to represent Client A after he withdrew as Client B's lawyer, but he did not seek written informed consent from Client B. This continued representation of Client A violated Minn. R. Prof. Conduct 1.9(a). Under Rule 1.9(a),

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Client A's interests were materially adverse to Client B's because, as explained above, Client B was potentially liable as a third-party defendant. Because Client B did not give written consent to Kalla's continued representation of Client A in the same matter in which Kalla had previously

---

4. The Rule states:
 (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
 (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
 (2) the representation is not prohibited by law;
 (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
 (4) each affected client gives informed consent, confirmed in writing.
 Minn. R. Prof. Conduct 1.7(b).

represented Client B, Kalla violated Rule 1.9(a).

## II.

We turn next to the question of discipline.

The referee recommended that Kalla receive a public reprimand and serve two years of supervised probation. Kalla argues that a private admonition is the appropriate discipline.

 A referee's recommendation for discipline "carries great weight," but ultimately it is the responsibility of our court to determine whether discipline is appropriate in a given case and what type of discipline should be imposed. *In re Edinger*, 700 N.W.2d 462, 467 (Minn.2005). In determining the appropriate discipline, we keep in mind that "[t]he purpose of attorney discipline is not to punish the attorney," but instead to protect the public, the judicial system, the legal profession, and to "guard the administration of justice." *In re Madsen*, 426 N.W.2d 434, 435 (Minn.1988). Deterrence of the disciplined attorney and other attorneys is an additional purpose of disciplinary sanctions. *In re Oberhauser*, 679 N.W.2d 153, 159 (Minn.2004). In determining the appropriate sanction, we consider four factors: (1) the nature of the misconduct, (2) the cumulative weight of rule violations, (3) the harm to the public, and (4) the harm to the legal profession. *In re Vaught*, 693 N.W.2d 886, 890 (Minn.2005).

The misconduct in this case involves a conflict of interest. Kalla created a situation in which there was a significant risk that his representation of one client would materially limit his representation of another client. We have previously found that a public reprimand is the appropriate discipline in cases of conflicts of interest. *See, e.g., In re Savin*, 780 N.W.2d 927, 927 (Minn.2010); *In re Brown*, 414 N.W.2d 410, 410 (Minn.1987).

 We consider the harm to the public and the legal system resulting from an attorney's actions. Client B was harmed by Kalla's actions. She incurred legal expenses in litigating Kalla's withdrawal. Kalla's misconduct also harmed the legal system. Kalla's conflicted representation led to unnecessary and time-consuming litigation concerning his disqualification, including appellate litigation.

 We also consider mitigating and aggravating factors when determining the appropriate discipline. Kalla argues that his lack of prior disciplinary history should be a mitigating factor in his discipline. This court has noted that prior disciplinary history is relevant to the disciplinary sanction. *In re Holker*, 730 N.W.2d 768, 775 (Minn.2007). A lengthy prior disciplinary history can be an aggravating factor. *In re Fett*, 790 N.W.2d 840, 851 (Minn.2010). But an attorney's *lack* of disciplinary history does not mitigate misconduct. *See In re Rebeau*, 787 N.W.2d 168, 176 (Minn.2010). Lack of remorse is considered an aggravating circumstance. *Stanbury*, 614 N.W.2d at 214. The referee found that Kalla exhibited little or no remorse for his conduct. His brief to our court additionally demonstrates his lack of remorse. Kalla not only persists in his assertion that no conflict of interest existed, but also cites as a mitigating factor Client B's "deceit" and "withholding material information." This attempt to deflect blame highlights Kalla's lack of remorse and insight into his own conduct.

Based on Kalla's misconduct and aggravating circumstances, the referee recommended that Kalla be publicly reprimanded and be placed on two years of supervised probation. Given the record before us, we see no reason to deviate

from the referee's recommendation, which we hereby adopt.

IT IS HEREBY ORDERED that respondent Christopher Kalla is publicly reprimanded and placed on probation for a period of two years from the date of filing of this opinion, subject to the following terms and conditions:

(a) Respondent shall cooperate fully with the OLPR in its efforts to monitor compliance with this probation. Respondent shall provide the Director with a current mailing address and shall immediately notify the Director of any change of address. Respondent shall promptly respond to the Director's correspondence by the due date. Respondent shall cooperate with the Director's investigation of any allegations of unprofessional conduct that may come to the Director's attention. Upon the Director's request, respondent shall authorize the release of information and documentation to verify compliance with this probation.

(b) Respondent shall abide by the Minnesota Rules of Professional Conduct.

(c) Respondent shall be supervised by a licensed Minnesota attorney, appointed by the Director to monitor compliance with the terms of this probation. Within two weeks of the date of filing of this opinion, respondent shall provide the Director with the names of four attorneys who have agreed to be nominated as respondent's supervisor. If, after diligent effort, respondent is unable to locate a supervisor acceptable to the Director, the Director will seek to appoint a supervisor. Until a supervisor has signed a consent to supervise, respondent shall on the first day of each month provide the Director with an inventory of active client files described in paragraph (d) below. Respondent shall make active client files available to the Director upon request.

(d) Respondent shall cooperate fully with the supervisor's efforts to monitor compliance with this probation. Respondent shall contact the supervisor and schedule a minimum of one in-person meeting per calendar quarter. By the first day of each month during probation, respondent shall provide the supervisor with an inventory of all active client files. With respect to each active file, the inventory shall disclose the client name, type of representation, names of parties and counsel on the opposing side of the action, date opened, most recent activity, next anticipated action, and anticipated closing date. Respondent's supervisor shall file written reports with the Director at least quarterly, or at such more frequent intervals as the Director may reasonably request.

(e) Respondent shall provide the Director, within 30 days of the date of filing of this opinion, and the probation supervisor, once one has been appointed, a written plan outlining office procedures designed to ensure that respondent is in compliance with probation requirements. Respondent shall provide progress reports as requested.

So ordered.