STATE OF MINNESOTA

IN SUPREME COURT

A24-1119

Original Jurisdiction

Per Curiam
Dissenting, McKeig, Hennesy, JJ.

In re Petition for Disciplinary Action against
Herbert A. Igbanugo, a Minnesota Attorney,
Registration No. 0191139.

Filed: April 1, 2026
Office of Appellate Courts

_____

Binh T. Tuong, Deputy Director, Timothy M. Burke, Senior Assistant Director, Office of
Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Herbert A. Igbanugo, Minneapolis, Minnesota, pro se.

_____

S Y L L A B U S

1.     The referee's finding that the attorney committed misconduct by filing a
frivolous lawsuit was not clearly erroneous.

2.     An indefinite suspension with no right to petition for reinstatement for
12 months is the appropriate discipline for the attorney's misconduct.

Suspended.

OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (the Director)[1] petitioned for disciplinary action against respondent-attorney Herbert A. Igbanugo, alleging that he violated Minnesota Rules of Professional Conduct 3.1, 4.4(a), and 8.4(d).[2] The alleged misconduct arose from a lawsuit that Igbanugo filed in the United States District Court for the District of Minnesota, which the district court dismissed as frivolous and for which Igbanugo was sanctioned. After an evidentiary hearing, the referee in this disciplinary proceeding found that Igbanugo's lawsuit was frivolous; that his conduct related to the lawsuit violated Rules 3.1, 4.4(a), and 8.4(d); and that he should be suspended from the practice of law for 12 months.

The Director does not contest the referee's findings or conclusions and supports the referee's discipline recommendation. Igbanugo also does not challenge the referee's findings or conclusions, but he contests the recommended discipline. In light of concessions made by the Director at oral argument regarding Rule 4.4(a), we do not address that rule, and we otherwise confirm that the referee's findings and conclusions that

---

[1] The filings in this case state that Susan M. Humiston, the Director of the Office of Lawyers Professional Responsibility, is recused and did not take part in these proceedings. Instead, a deputy director and senior assistant director of the Office of Lawyers Professional Responsibility have acted on behalf of the Director.

[2] We previously suspended Igbanugo, who petitioned for reinstatement from his prior suspension shortly before this new, pending disciplinary action was filed by the Director. We address Igbanugo's petition for reinstatement from that suspension in a separate opinion independently from this new disciplinary action. *See In re Igbanugo*, __ N.W.3d __, No. A24-1103 (Minn. Apr. 1, 2026) (opinion on reinstatement).

Igbanugo violated Rules 3.1 and 8.4(d) were not clearly erroneous. We further hold that an indefinite suspension with no right to petition for reinstatement for 12 months is the appropriate discipline.

**FACTS**

Igbanugo was admitted to practice law in Minnesota in July 1988. Since then, he has primarily practiced immigration law. Prior to this disciplinary proceeding, Igbanugo had five previous instances of discipline—three admonitions and two suspensions. In 2015, we suspended Igbanugo for a minimum of 90 days for failing to communicate with clients, failing to credit paid client fees, attempting to collect already paid fees, failing to diligently represent clients, and sending harassing letters to collect legal fees. *In re Igbanugo* (*Igbanugo I*), 863 N.W.2d 751, 754–55 (Minn. 2015). In 2023, we indefinitely suspended Igbanugo—with no right to petition for reinstatement for 10 months—for 50 rule violations involving seven client matters. *See In re Igbanugo* (*Igbanugo II*), 989 N.W.2d 310, 316–17 (Minn. 2023). Igbanugo remains suspended as a result of our decision in *Igbanugo II*.

The misconduct at issue here arises from a lawsuit brought by Igbanugo in the United States District Court for the District of Minnesota. The circumstances underlying Igbanugo's federal lawsuit relate to some of the conduct that was the subject of *Igbanugo II*—specifically, Igbanugo's conduct in three of the seven client matters. *See id.* at 317–18 (discussing the "A.C-G., M.D., and O.O.C." matters). For consistency with the record in this disciplinary proceeding, we refer to the clients in those three matters collectively as the "*Onofre* clients."

The *Onofre* clients, represented by the Wilson Law Group, filed a lawsuit ("the *Onofre* case") against Igbanugo and his firm, alleging malpractice, breach of contract, and violation of the Minnesota Consumer Fraud Act.[3] The *Onofre* clients prevailed at trial and obtained a judgment against Igbanugo for more than $43,000. The court of appeals affirmed, and we denied review. *Cedillo v. Igbanugo*, No. A18-0860, 2019 WL 2168766, at *1 (Minn. App. May 20, 2019), *rev. denied* (Minn. Aug. 20, 2019).[4] Separately from representing the *Onofre* clients in their lawsuit, an attorney from the Wilson Law Group also filed an ethics complaint against Igbanugo with the Office of Lawyers Professional Responsibility (OLPR) on behalf of the *Onofre* clients. The allegations in that complaint ultimately became part of the charges in *Igbanugo II*.

At the end of December 2020, the Director submitted charges to the Lawyers Professional Responsibility Board (LPRB) that ultimately resulted in the disciplinary petition that we resolved in *Igbanugo II*.

---

[3]     The three *Onofre* clients were immigrants without legal status who sought legal residency. *Igbanugo II*, 989 N.W.2d at 317. Igbanugo or his employees falsely told the *Onofre* clients that they could obtain legal residency through their U.S. citizen children, obtained retainer fees from the *Onofre* clients, filed forms for status for which the *Onofre* clients were ineligible, and did not refund unearned retainer money to the *Onofre* clients. *Id.* at 317–18.

[4]     Although the court of appeals' case caption lists the matter brought by plaintiffs Olimpia Onofre Cedillo, et al., as "*Cedillo*," the record in this disciplinary proceeding refers to the case as the *Onofre* case. To avoid confusion, we refer to this case as the *Onofre* case.

On January 14, 2021, Igbanugo filed the federal lawsuit that is at the heart of the current disciplinary proceeding. Igbanugo sued the following defendants:

- *The State defendants*: The OLPR, the OLPR Director, OLPR staff attorneys, the LPRB, the LPRB Chair, and an LPRB member;

- *The Wilson defendants*: The law firm that represented Igbanugo's former clients in the *Onofre* case and various lawyers at that firm; and

- *The Aust defendants*: The expert witness for the clients in the *Onofre* case and the expert witness' law firm.

Although Igbanugo brought several claims against the State defendants, the Director seeks discipline here only for Igbanugo's conduct related to the Wilson and Aust defendants, not the State defendants. Accordingly, we focus only on Igbanugo's conduct toward the Wilson and Aust defendants in the federal lawsuit.

Igbanugo brought a single count against the Wilson and Aust defendants that he labeled as "Vexatious Litigation, Unbridled Violation of Ethics Rules, and Abuse of Legal/Court Process."[5] Much of the 109-page complaint (with over 2,500 pages of exhibits) rehashed the *Onofre* trial and appeal, repeatedly accusing the Wilson and Aust defendants of unethical, dishonest, and vengeful behavior. Igbanugo directed particular hostility toward defendant Wilson, making inflammatory accusations and personal attacks against Wilson throughout the complaint. In response to the Aust defendants' initial, informal request that Igbanugo consider dismissing his lawsuit, Igbanugo informed the Aust attorneys that "he would make it his mission in life to pursue [the defendants] for their

---

[5] Igbanugo alleged nine claims against the State defendants, accusing them of violating his constitutional rights.

roles in the *Onofre* case." *Igbanugo v. Minn. Off. of Laws. Pro. Responsibility*, No. 21-CV-0105-PJS-HB, 2021 WL 5216904, Order at *7 (D. Minn. filed Nov. 9, 2021).

The Wilson and Aust defendants moved to dismiss Igbanugo's complaint[6] and sought sanctions under Federal Rule of Civil Procedure 11.[7] Prior to filing their motions for sanctions, the Wilson and Aust defendants each served Igbanugo with a Rule 11 safe-harbor notice, requesting that Igbanugo voluntarily dismiss the lawsuit.[8] Igbanugo refused, responded with personal attacks, and threatened to seek sanctions against the Wilson and Aust defendants.

The federal district court granted all the defendants' motions to dismiss. *Id.* at *7–8. As to the claims against the Wilson and Aust defendants, the court noted that because "vexatious litigation" and "unbridled violation of ethics rules" are not causes of action, the

---

[6]     The State defendants also brought a motion to dismiss, which the federal district court also granted.

[7]     Under Federal Rule of Civil Procedure 11(b), an attorney's presentation of a "pleading, written motion, or other paper" certifies that the material "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b). In determining whether a violation has occurred, a court "must determine 'whether a reasonable and competent attorney would believe in the merit of an argument.' " *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003) (quoting *Miller v. Bittner*, 985 F.2d 935, 939 (8th Cir. 1993)).

[8]     Rule 11 "creates a 'safe harbor' where a party is given the opportunity to withdraw or correct the challenged paper before a sanctions motion is filed." *Caranchini v. Nationstar Mortg., LLC*, 97 F.4th 1099, 1102 (8th Cir. 2024). Specifically, a party served with a motion for sanctions under Rule 11 has a 21-day period in which to correct the sanctionable conduct. Fed. R. Civ. P. 11(c)(2). The motion may not "be filed or be presented to the court" until the 21-day period has passed and the sanctionable conduct has not been corrected. *Id.*

only potentially recognizable claim against the Wilson and Aust defendants was for abuse of process. *Id.* at \*5. The court found that Igbanugo had forfeited his abuse of process claim by explaining at the motion to dismiss hearing that he was "not suing these defendants for that tort, but rather is seeking to have [the federal court] discipline them, impose sanctions under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927, and issue a declaratory judgment that they violated the Minnesota Rules of Professional Conduct in connection with the *Onofre* case." *Id.* The court held that there is no private cause of action to seek such discipline. *Id.*

The district court also granted the Wilson and Aust defendants' motions for sanctions under Rule 11. *Id.* at \*8. The court ultimately sanctioned Igbanugo $50,000. *Igbanugo v. Minn. Off. of Laws. Pro. Responsibility*, No. 21-CV-00105-PJS-HB, Order at 3 (D. Minn. filed Jan. 3, 2022). The court described Igbanugo's claims against the Wilson and Aust defendants as "utterly frivolous," explaining as follows:

> No reasonable and competent attorney could believe that he could bring a private lawsuit in federal court for the purpose of imposing professional discipline and sanctions under Rule 11 and § 1927 for the conduct of his opposing counsel in a completely separate state-court case. Nor could any reasonable and competent attorney believe that he could bring a private lawsuit to institute attorney-disciplinary proceedings. And it has been clear for decades that there is no private right of action under the Minnesota Rules of Professional Conduct.

*Igbanugo*, 2021 WL 5216904, at \*6 (D. Minn. filed Nov. 9, 2021). Although Igbanugo contended that he brought his lawsuit in good faith, the court found that his conduct throughout the litigation indicated otherwise, noting that his actions "seem[ed] designed to

7

inflict costs and exact revenge against his opponents." *Igbanugo*, No. 21-CV-00105-PJS-HB, at 4–5 (D. Minn. filed Jan. 3, 2022).

Igbanugo appealed the dismissal and sanctions orders to the United States Court of Appeals for the Eighth Circuit, which affirmed the district court's decision. *Igbanugo v. Minn. Off. of Laws. Pro. Resp.*, 56 F.4th 561, 564 (8th Cir. 2022). The Wilson and Aust defendants recovered the $50,000 in sanctions through a bond that Igbanugo had been required to post to pursue his appeal to the Eighth Circuit.

The Director filed a petition for disciplinary action against Igbanugo, alleging misconduct arising from the lawsuit for (1) bringing claims that had no good-faith basis in law or fact and were frivolous, in violation of Rules of Professional Conduct 3.1 and 8.4(d) and (2) bringing frivolous claims for no purpose other than to burden, harass, and intimidate, in violation of Rules 4.4(a) and 8.4(d). The Director recommended that Igbanugo be suspended with no right to petition for reinstatement for at least six months. Igbanugo filed an answer to the petition, and we appointed a referee.

The referee held an evidentiary hearing at which Igbanugo testified. Following the hearing, the referee issued an order finding the facts described above and concluding that the Director had proven by clear and convincing evidence that Igbanugo violated Rules 3.1, 4.4(a), and 8.4(d) by filing a frivolous lawsuit intended to burden, harass, and intimidate the Aust and Wilson defendants. The referee found Igbanugo's testimony not credible "in any matter relevant to the determination in this case." She also found four aggravating factors: (1) Igbanugo's failure to acknowledge, regret, or show remorse for his misconduct or the effect it has had on others; (2) his indifference to making "restitution"

8

payments; (3) his substantial experience with federal civil litigation; and (4) his history of prior discipline, including two suspensions and discipline for similar misconduct. She found no mitigating factors. Ultimately, the referee recommended that we indefinitely suspend Igbanugo for a minimum of 12 months, a more severe sanction than the Director's recommendation of at least six months.

## ANALYSIS

We first clarify the scope of Igbanugo's misconduct before determining the appropriate discipline.

### I.

Because Igbanugo timely ordered a transcript, the referee's findings and conclusions are not binding. *See In re MacDonald*, 906 N.W.2d 238, 243 (Minn. 2018). Still, we extend "great deference" to the referee's findings and conclusions. *In re Paul*, 809 N.W.2d 693, 702 (Minn. 2012). We "review the referee's findings of fact and application of the Minnesota Rules of Professional Conduct to the facts of the case for clear error." *In re Nielson*, 977 N.W.2d 599, 608 (Minn. 2022). "A referee's findings are clearly erroneous when they leave us with the definite and firm conviction that a mistake has been made." *Id.* (citation omitted) (internal quotation marks omitted).

The referee found that Igbanugo filed a frivolous lawsuit and had no purpose other than to burden, intimidate, and harass the defendants in violation of Rules 3.1, 4.4(a), and 8.4(d). Because the Director does not challenge the referee's findings or conclusions and Igbanugo has made clear that he also is not contesting the referee's findings or conclusions,

9

we do not need to evaluate whether the referee clearly erred.[9] *See In re Nett*, 839 N.W.2d 716, 721 (Minn. 2013) ("Neither party challenges any of the referee's findings or conclusions with respect to [the attorney's] acts of misconduct. Therefore, the only issue before us is the appropriate discipline to be imposed."). Nonetheless, we elect to apply our judgment and evaluate the referee's findings and application of the Rules to the facts of this case for clear error to clarify the scope of the misconduct given concessions made at oral argument.

At oral argument, the Director conceded that we need not address Rule 4.4(a) to hold Igbanugo accountable for his misconduct. Given that concession, the lack of briefing from the parties on whether Rule 4.4(a) applies to attorneys representing themselves, and the uncertainty as to whether Rule 4.4(a) applies to Igbanugo's self-representation, we decline to address the referee's additional finding that Igbanugo's harassing conduct violated Rule 4.4(a).[10]

---

[9]    Igbanugo's brief to this court states that "all his arguments and defenses are only geared towards mitigation as opposed to contesting his unintentional violation of the ethics rules in this matter." But his brief at times appears to challenge the referee's findings. At oral argument, however, in response to being asked if he was challenging the referee's findings, Igbanugo responded, "No. Not at all. Everything I have done is for purposes of mitigation." Accordingly, we conclude that Igbanugo is not contesting the referee's findings or conclusions.

[10]    Rule 4.4(a) states that "*[i]n representing a client*, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person." Minn. R. Prof. Conduct 4.4(a) (emphasis added).

Here, Igbanugo was representing himself when he committed the alleged misconduct. The public positions of the LPRB and the Director regarding Rule 4.2, regarding communications with represented parties, seem to conflict with the Director's

We therefore turn to the finding by the referee that Igbanugo filed a frivolous federal lawsuit that violated Rules 3.1[11] and 8.4(d).[12] Igbanugo does not challenge this finding and, in any event, it was not clearly erroneous. The record demonstrates that Igbanugo's lawsuit was "utterly frivolous." *See Igbanugo*, 2021 WL 5216904, at *6 (D. Minn. filed Nov. 9, 2021). He withdrew his only recognizable claim—abuse of process—at a motion

---

position that Igbanugo violated Rule 4.4(a) in this case. The antecedent language in Rules 4.2 and 4.4(a) is identical—both rules begin with "[i]n representing a client." Minn. R. Prof. Conduct 4.2, 4.4(a). In Opinion 25, issued in 2023, the LPRB rejected a 2022 opinion from the American Bar Association (ABA) recommending that Rule 4.2 should apply to self-represented attorneys. Op. LPRB No. 25, at 2–3 (July 28, 2023). "[I]n order to eliminate any ambiguity," the LPRB adopted the dissent to the ABA opinion, concluding that Rule 4.2 does not apply to attorneys who represent themselves. *Id.* at 1 (citing ABA Comm. on Ethics & Pro. Resp., Formal Op. 22-502 (2022)). The LPRB reasoned that Rule 4.2 is "premised on the antecedent language of 'In representing a client' " and that a self-represented attorney "is simply not representing a client as the term 'client' is typically understood." *Id.* at 2 (emphasis removed).

In July 2025, the Director published an article confirming that the Director's Office "concurs" with LPRB Opinion 25 that Rule 4.2 does not apply to self-represented attorneys. Susan Humiston, *The No-Contact Rule and the Pro Se Lawyer*, Bench and Bar of Minnesota, Jul. 29, 2025. Although we have not determined the meaning of the antecedent language that appears in both rules, *see In re Jensen*, 12 N.W.3d 731, 741 n.8 (Minn. 2024), it is difficult to square the Director's decision to charge Igbanugo with violating Rule 4.4(a) with the position that Rule 4.2 does not apply to self-represented attorneys.

We note that on October 17, 2025, after we heard oral argument in this case, we referred this issue to the LPRB. *See* In re Proposed Amendment to Minnesota Rules of Professional Conduct, No. ADM10-8005, Order at 1 (Minn. filed Oct. 17, 2025). Specifically, we ordered the LPRB to consider the issue of whether Rule 4.2 or Rule 4 in general should be amended to provide clarification. *Id.*

[11] "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law." Minn. R. Prof. Conduct 3.1.

[12] "It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]" Minn. R. Prof. Conduct 8.4(d).

to dismiss hearing, and he therefore was left with no recognizable cause of action to pursue his claims. And we agree with the federal district court and the referee that Igbanugo's sole purpose in bringing the lawsuit was to harass the defendants. A lawsuit brought not to advance recognizable legal claims but to harass is frivolous. We have made clear that "[e]ngaging in frivolous claims or lawsuits violates Rules 3.1, and 8.4(d)." *In re Ulanowski*, 800 N.W.2d 785, 794 (Minn. 2011); *see also In re Pinotti*, 585 N.W.2d 55, 62 (Minn. 1998) (noting that an attorney's "groundless claims" violated Rule 3.1 and his attempts to relitigate other baseless claims violated Rule 8.4(d)). Accordingly, we conclude that the referee did not clearly err in finding that Igbanugo filed a frivolous lawsuit in violation of Rules 3.1 and 8.4(d).

## II.

Having concluded that the referee's finding that Igbanugo filed a frivolous lawsuit in violation of Rules 3.1 and 8.4(d) was not clearly erroneous, we must determine the appropriate discipline. The referee has recommended that Igbanugo be indefinitely suspended with no right to petition for reinstatement for 12 months.[13]

Although we give great weight to the referee's recommendation for discipline, we retain the "ultimate responsibility for determining appropriate discipline." *See In re*

---

[13] Igbanugo argued at oral argument that no additional discipline is warranted given his current suspension, which has been in effect since April 2023. But we also heard oral argument that same day on Igbanugo's petition for reinstatement from his current suspension. We have chosen to separately address the proper discipline in this new disciplinary action and Igbanugo's petition for reinstatement from his prior suspension. *See In re Igbanugo*, __ N.W.3d __, No. A24-1103 (Minn. Apr. 1, 2026) (opinion on reinstatement).

*Montez*, 812 N.W.2d 58, 66, 68 (Minn. 2012). The purpose of professional discipline "is not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Rebeau*, 787 N.W.2d 168, 173 (Minn. 2010). We consider four factors to determine the appropriate discipline: (1) the nature of the misconduct, (2) the cumulative weight of the violations, (3) the harm to the public, and (4) the harm to the legal profession. *In re Kleyman*, 960 N.W.2d 566, 572 (Minn. 2021). We also consider mitigating and aggravating circumstances. *Id.* Finally, although we impose discipline on a case-by-case basis, we look to similar cases for guidance and to ensure consistent discipline. *In re Capistrant*, 905 N.W.2d 617, 620 (Minn. 2018).

A.

We begin by considering the four factors. First, the nature of Igbanugo's misconduct is serious and warrants a significant disciplinary response. We have held that suspension is appropriate when an attorney files a frivolous, vexatious lawsuit. *In re Tieso*, 396 N.W.2d 32, 34 (Minn. 1986); *see also Ulanowski*, 800 N.W.2d at 800 (citing *Tieso*, 396 N.W.2d at 34). The seriousness of Igbanugo's frivolous lawsuit is heightened by its harassing nature. The referee found that Igbanugo "clearly [sought] to inflict financial costs on the Wilson and Aust defendants in retaliation for their winning a malpractice case against him and complying with their ethical obligation to report [Igbanugo's] malpractice to OLPR." We agree. It appears that Igbanugo's purpose in bringing this frivolous lawsuit was to harass those he perceived as attacking him. Igbanugo used his lawsuit to levy personal attacks against the Wilson and Aust defendants that, at

13

most, had a tenuous connection to Igbanugo's frivolous claims. And in a phone call to the Aust defendants' attorney, Igbanugo stated that he would make it his "mission in life" to pursue the defendants. The federal district court dismissed Igbanugo's lawsuit, made clear that no reasonable or competent attorney would have brought the suit, and sanctioned Igbanugo $50,000. The frivolousness of the federal lawsuit and the appropriateness of the district court's $50,000 sanction was further confirmed by the Eighth Circuit on appeal. *Igbanugo*, 56 F.4th at 567–68. In bringing his federal lawsuit, Igbanugo forced the defendants and the federal court to spend the time and money necessary to wade through his frivolous claims. Accordingly, the seriousness of Igbanugo's misconduct warrants significant discipline.

Second, we evaluate the cumulative weight of Igbanugo's disciplinary violations. We distinguish between "a brief lapse in judgment or a single, isolated incident and multiple instances of misconduct occurring over a substantial amount of time." *In re Pearson*, 888 N.W.2d 319, 322 (Minn. 2016) (citation omitted) (internal quotation marks omitted). Here, the cumulative weight of Igbanugo's misconduct is significant because Igbanugo's conduct was not a brief lapse in judgment or an isolated incident. Igbanugo spent several months preparing his complaint, and he ultimately spent nearly two years pursuing his lawsuit. He refused to voluntarily dismiss his lawsuit even when served with Rule 11 safe-harbor notices. Instead, he responded with personal insults and threats to seek sanctions against the defendants. Igbanugo's actions accordingly involve sustained misconduct over a substantial period of time, warranting a more severe disciplinary sanction.

14

Third and fourth, we also conclude that Igbanugo's misconduct caused harm to both the public and the legal profession. Frivolous claims harm the legal profession because they waste court resources. *Ulanowski*, 800 N.W.2d at 801. And although Igbanugo's misconduct did not result in any direct harm to any client, an attorney's failure to follow court rules undermines public confidence in the legal system. *In re Murrin*, 821 N.W.2d 195, 208 (Minn. 2012). Here, the federal district court noted that Igbanugo inundated that court and the defendants "with thousands of pages of mostly irrelevant exhibits, and he continued to file additional materials following oral argument [on the motions to dismiss and for sanctions] without seeking or obtaining permission to do so." *Igbanugo*, No. 21-CV-00105-PJS-HB, at 4–5 (D. Minn. filed Jan. 3, 2022).

We have also held that an attorney harms the public and the legal profession when opposing counsel incurs legal fees defending against frivolous claims. *See Ulanowski*, 800 N.W.2d at 801 (holding that the attorney harmed the public and legal profession because his frivolous claims cost opposing parties approximately $46,000 in legal fees). Here, there is evidence in the record that the Wilson and Aust defendants incurred more than $114,000 in attorney fees and costs in defending themselves against Igbanugo's frivolous claims.[14] Igbanugo's misconduct also caused non-financial harm—the Wilson and Aust defendants suffered the emotional burden of being on the receiving end of frivolous and harassing litigation.

---

[14] The Wilson and Aust defendants have recovered only $50,000 through the bond that Igbanugo posted when he filed his appeal of the federal district court's orders granting dismissal and sanctions.

15

B.

We next consider mitigating and aggravating factors. We review challenges to the facts and the application of the rules to the facts for clear error. *Ulanowski*, 800 N.W.2d at 801.

1.

Igbanugo challenges the referee's finding that there were no mitigating factors. In essence, Igbanugo argues that he brought the frivolous federal lawsuit in good faith to defend himself from wrongful claims made against him in the *Onofre* case and that this should have been considered a mitigating factor. The referee rejected Igbanugo's claim of good faith, finding that his claim was without merit or support in the record and that Igbanugo was not credible in "any matter relevant to the determination of the case." We give "great deference to a referee's findings and will not reverse those findings unless they are clearly erroneous, especially in cases where the referee's findings rest on disputed testimony or in part on respondent's credibility, demeanor, or sincerity." *See In re Kennedy*, 946 N.W.2d 568, 576 (Minn. 2020) (citation omitted) (internal quotation marks omitted). In rejecting Igbanugo's claim that he brought the lawsuit in good faith to defend himself against the *Onofre* case, the referee pointed out that the *Onofre* case had concluded when Igbanugo filed the federal lawsuit and that he had sued the attorneys who represented the *Onofre* clients, but not the *Onofre* clients themselves. The referee further relied on Igbanugo's personal attacks against the Wilson and Aust defendants and his statement that he was on a "mission" to pursue those who brought the *Onofre* case against him as evidence that he brought the lawsuit to harass the defendants, not to defend himself. We discern no

16

clear error in the referee's findings, and we agree that Igbanugo's purported good faith in bringing the lawsuit is not a mitigating factor.

Igbanugo additionally asserts that he did not commit any new or distinct professional misconduct warranting a separate disciplinary action, arguing that this disciplinary action arises from the same "nucleus of operative facts" as his misconduct in *Igbanugo II*. But we agree with the Director that the misconduct at issue here, arising from Igbanugo's federal lawsuit, is distinct from the misconduct concerning his representation of clients that we addressed in *Igbanugo II*.

2.

The referee found four aggravating factors to be present here: (1) Igbanugo's indifference to making restitution payments; (2) his failure to acknowledge, regret, or show remorse for his misconduct or the effect it has had on others; (3) his substantial experience with federal civil litigation; and (4) his history of prior discipline, including two suspensions and other discipline for similar misconduct. We consider each of these factors below. Although we reject the referee's finding that Igbanugo's failure to pay "restitution" is an aggravating factor, we agree with the remaining aggravating factors that the referee identified.

First, although the referee found Igbanugo's "indifference to making restitution" payments to be an aggravating factor in this case, we decline to adopt that reasoning. The referee appears to characterize Igbanugo's failure to repay all the costs incurred by the

17

Wilson and Aust defendants as indifference to making "restitution."[15] We do not consider Igbanugo's failure to repay all of the Wilson and Aust defendant's costs as an aggravating factor because we have already accounted for this harm in our analysis of the harm caused by Igbanugo's conduct. *See In re Blomquist*, 958 N.W.2d 904, 916 n. 10 (Minn. 2021) (holding that the attorney's failure to make restitution ordered by a judgment was not an aggravating factor because we had already considered the harm the attorney caused to the victim when evaluating the harm to the public); *In re Udeani*, 945 N.W.2d 389, 399 (Minn. 2020) ("Our case law does not support an aggravating factor based on [an attorney's] indifference toward restitution because we have already considered his failure to make restitution to clients when analyzing the harm caused to his clients.").

Second, we affirm the referee's determination that Igbanugo's lack of remorse is an aggravating factor. *See Igbanugo II*, 989 N.W.2d at 331; *Udeani*, 945 N.W.2d at 398–99. "To express remorse, an attorney must express genuine regret and moral anguish for his or

---

[15] Whether the facts of this case implicate restitution is an open question. Aside from the $50,000 in Rule 11 sanctions, which we understand has been paid, Igbanugo has not been ordered by any court to pay additional amounts to the Wilson and Aust defendants. Rather, the referee appears to characterize Igbanugo's failure to repay all the costs incurred by the Wilson and Aust defendants as a failure to pay "restitution." But in the attorney discipline context, we have typically referred to "restitution" as repayment of misappropriated client funds. *See In re Harrigan*, 841 N.W.2d 624, 627, 631 (Minn. 2014) (holding that the attorney's indifference to making restitution was an aggravating factor when the attorney had failed to make restitution on misappropriated client funds); *In re Roggeman*, 779 N.W.2d 520, 526–27 (Minn. 2010) (holding that the attorney was indifferent to making restitution to his client for fees paid, and this indifference aggravated his misconduct). Accordingly, it is unclear if "restitution" extends to repaying additional legal fees that the defendants incurred in the federal lawsuit. That said, we need not address this question in this case because we decline to consider Igbanugo's indifference to restitution as an aggravating factor.

her conduct and the effect it had on others." *In re Severson*, 860 N.W.2d 658, 670 (Minn. 2015).

Igbanugo has failed to acknowledge the nature of his conduct. Although Igbanugo claims that he accepts that his lawsuit was "misguided" and "frivolous," he contends that the district court only deemed the lawsuit to be frivolous because of a supposed "misunderstanding." Specifically, he contends that he did not actually withdraw his abuse of process claim—the only recognizable claim in his complaint. He attributes the misunderstanding to the district court's and court reporter's alleged inability to understand his accent. That contention finds no support in the transcript of the motion to dismiss hearing in which he withdrew his claim. The transcript shows that Igbanugo clearly and voluntarily withdrew his abuse of process claim,[16] leaving only claims of "vexatious litigation" and "unbridled violation of ethics rules," which are not recognizable causes of action. *See Igbanugo*, 2021 WL 5216904, at *5 (D. Minn. filed Nov. 9, 2021). His effort

---

[16] The transcript from the motion to dismiss hearing directly shows that Igbanugo voluntarily withdrew his abuse of process claim:

> THE COURT: Okay. And so to the extent your complaint talks about defamation or talks about abuse of process, in those sections you're describing to me conduct that you think should be disciplined, but you are not making a defamation claim or an abuse-of-process claim; is that correct?

> MR. IGBANUGO: That is correct. And abuse of process on the goods and the prospective relief that are supposed to be -- under the petition for the global injunctive relief. So I'm not suing for defamation. I know I can't. I understand all that. So no.

> THE COURT: Okay. Same with abuse of process, right?

> MR. IGBANUGO: Of course. Yes.

to excuse the lawsuit's frivolousness as a "misunderstanding" confirms his unwillingness to acknowledge the nature of his misconduct in bringing a frivolous lawsuit. Moreover, in his briefing to the referee and to this court, Igbanugo continues to relitigate the *Onofre* trial and shift blame onto Wilson—apparently seeking to justify his actions against the defendants and mitigate his own responsibility.

Igbanugo also challenges the referee's determination that his testimony related to his remorse was not credible and that he did not express remorse for his actions. Although Igbanugo argues that this was an abuse of the referee's discretion, that is not the applicable standard. We review credibility determinations for clear error. *Ulanowski*, 800 N.W.2d at 804 ("We conclude that the referee's conclusion that [the attorney's] lack of remorse was an aggravating factor was not clearly erroneous."). The referee did not find Igbanugo to be credible in any matter relevant to the determination of the case, including Igbanugo's remorse. And "the referee was in the best position to assess" Igbanugo's credibility. *See id.* Accordingly, we discern no clear error in the referee's conclusion that Igbanugo's failure to express remorse by deflecting his misconduct and justifying his actions is an aggravating factor.

Third, we agree with the referee that Igbanugo's substantial experience in the practice of law, and with federal civil litigation in particular, is another aggravating factor. *See Igbanugo II*, 989 N.W.2d at 331 n.15 (noting that substantial experience practicing law is an aggravating factor); *In re Fett*, 790 N.W.2d 840, 852 (Minn. 2010) (emphasizing that an attorney's "experience in a particular area of the law" was an aggravating factor "when the misconduct [arose] from that area of practice"). When Igbanugo filed his frivolous

20

federal lawsuit, he had been practicing for more than 30 years. And he testified to having represented clients in more than 80 cases in federal court. This extensive experience provides additional justification for a substantial disciplinary sanction here.

Fourth, we also agree with the referee that Igbanugo's prior disciplinary history is an aggravating factor. *See Ulanowski*, 800 N.W.2d at 803. We consider an attorney's disciplinary history because, after being disciplined, an attorney is expected to show a "renewed commitment" to ethical behavior. *In re Coleman*, 793 N.W.2d 296, 308 (Minn. 2011). Here, Igbanugo's disciplinary history is extensive. He has received three admonitions, a 90-day suspension, and an indefinite suspension with no right to petition for reinstatement for 10 months.[17] Because "[a] lengthy prior disciplinary history can be an aggravating factor," *In re Kalla*, 811 N.W.2d 576, 583 (Minn. 2012), we conclude that Igbanugo's disciplinary history is an aggravating factor here.

C.

Finally, we consider discipline imposed in similar cases to ensure that our decision is consistent with prior sanctions. The referee recommends that we impose an indefinite suspension with no right to petition for reinstatement for 12 months. We give "substantial weight" to a referee's recommendation that is "in line with the broad range of discipline we have imposed in prior cases." *In re Nwaneri*, 978 N.W.2d 878, 892 (Minn. 2022).

---

[17] At the time Igbanugo filed the frivolous federal lawsuit at issue here, he had been disciplined four times and had been charged with (but not yet disciplined for) the misconduct that would result in his current *Igbanugo II* suspension. Although he had not yet been disciplined in *Igbanugo II* when he filed the lawsuit, he had already committed all the misconduct for which he would eventually be disciplined in that case.

In *Ulanowski*, we indefinitely suspended the attorney for a minimum of 12 months for making misrepresentations to the district court, filing frivolous claims, violating court rules, harassing opposing counsel, improperly withdrawing from the representation of a client, improperly threatening criminal prosecution, failing to inform clients of a settlement offer, failing to timely return client materials, making misrepresentations to the Director, and refusing to cooperate in the Director's investigation. 800 N.W.2d at 788. That attorney's misconduct caused harm in five client matters, in his own marital dissolution proceeding, and the Director's investigation. *Id.* Although Igbanugo's present misconduct is not as extensive as that in *Ulanowski* (here, Igbanugo's misconduct pertains to a single lawsuit), the scope of Igbanugo's misconduct is still extensive—he harmed more than a dozen people and entities. Igbanugo also has a more extensive disciplinary history.

In *Nett*, we indefinitely suspended the attorney for a minimum of nine months for engaging in a pattern of bad-faith litigation, including making false and harassing statements toward judges and others involved in litigation against her clients. 839 N.W.2d at 718. In a 17-month period, the attorney made frivolous and harassing personal attacks and discriminatory statements in 11 documents filed with the court across five matters. *Id.* at 722. Although the misconduct here is arguably less extensive than the misconduct at issue in *Nett*, there are other important differences. In *Nett*, the attorney had no prior disciplinary history, and we determined that two mitigating factors counseled against discipline. *See id.* at 721–22. Here, Igbanugo has an extensive disciplinary history, and there are no mitigating factors counseling against discipline.

Finally, in *Murrin*, we indefinitely suspended the attorney for a minimum of six months. 821 N.W.2d at 210. The attorney failed to comply with several court orders, was sanctioned for violating court orders, named defendants in his pleadings even after the defendants had been dismissed from the actions, and continued to assert claims after the claims had been dismissed. *Id.* at 207–08. A key difference between Igbanugo's lawsuit and the lawsuits in *Murrin*, however, is that the *Murrin* lawsuits were not wholly frivolous—the attorney won a $1,760,000 default judgment. *See id.* at 209. Here, Igbanugo's federal lawsuit was "utterly frivolous," *Igbanugo*, 2021 WL 5216904, at *6 (D. Minn. filed Nov. 9, 2021), and his disciplinary history is also more extensive.

Accordingly, the referee's recommended discipline is "in line with the broad range of discipline we have imposed in prior cases," and we therefore give that recommendation "substantial weight." *See Nwaneri*, 978 N.W.2d at 892.

\* \* \*

A suspension of substantial length is appropriate based on the facts and circumstances of this case and the significant aggravating factors discussed above. For these reasons, we agree with the referee that the appropriate discipline is an extension of Igbanugo's current indefinite suspension, with no right to petition for reinstatement for an additional 12 months.

# CONCLUSION

Accordingly, we order that:

1.       Respondent Herbert A. Igbanugo will remain indefinitely suspended from the practice of law, with no right to petition for reinstatement for 12 months from the date of this opinion.

2.       Respondent must petition for reinstatement pursuant to Rule 18(a)–(d), Rules on Lawyers Professional Responsibility (RLPR).   Reinstatement is conditioned on satisfaction of continuing legal education requirements, *see* Rule 18(e)(4), RLPR, and successful completion of the written examination required for admission to the practice of law by the State Board of Law Examiners on the subject of professional responsibility, *see* Rule 18(e)(2), RLPR; Rule 4.A(5), Rules for Admission to the Bar (requiring evidence that an applicant has successfully completed the Multistate Professional Responsibility Examination).

3.       Respondent must pay $900 in costs, *see* Rule 24(a), RLPR, and must comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).

Suspended.

MᴄKEIG, Justice (dissenting).

I agree that the referee's finding that respondent-attorney Herbert A. Igbanugo committed misconduct by filing a frivolous lawsuit was not clearly erroneous. After being disciplined for misconduct five times since his admission to the bar in 1988, including two suspensions, Igbanugo again committed misconduct by filing a lawsuit solely to burden, harass, and intimidate attorneys who had represented clients against him. Igbanugo failed to acknowledge or demonstrate remorse for this misconduct. Because I would disbar Igbanugo rather than suspend him for a third time, I respectfully dissent.

The court artfully lays out why the four factors we use to determine the appropriate discipline indicate that Igbanugo's misconduct warrants significant discipline. *See In re Kleyman*, 960 N.W.2d 566, 572 (Minn. 2021) (listing the four factors). The three aggravating factors and lack of any mitigating factors further require a substantial disciplinary sanction here. While "we place great weight on the referee's recommended discipline . . . we retain ultimate responsibility for determining the appropriate sanction." *In re McCloud*, 26 N.W.3d 445, 451–52 (Minn. 2025) (disbarring the attorney despite the referee's recommendation that we suspend the attorney indefinitely with no right to petition for reinstatement for 90 days) (citation omitted) (internal quotation marks omitted). I would weigh Igbanugo's lack of remorse and disciplinary history more heavily and disbar, as we have done in similar cases.

The court cites *In re Ulanowski*, where we indefinitely suspended an attorney for a minimum of 12 months for making misrepresentations to the district court, filing frivolous

claims, violating court rules, and harassing opposing counsel, among other misconduct. *In re Ulanowski* (*Ulanowski I*), 800 N.W.2d 785, 788 (Minn. 2011). When we decided *Ulanowski I*, the attorney's only disciplinary history was an admonition in April 2008. *Id.* at 792.

Two years later, we again disciplined the attorney for misconduct. *In re Ulanowski* (*Ulanowski II*), 834 N.W.2d 697, 699 (Minn. 2013) (disciplining the attorney for failing to refund unearned money to clients, to communicate with clients, to satisfy a law-related judgment, and to cooperate with the Director's disciplinary investigation). This time, we disbarred him, in large part because his disciplinary history had grown since we suspended him from the practice of law in *Ulanowski I*: he was admonished three more times for various acts of misconduct. *Id.* at 699, 704.

This case is more like *Ulanowski II* than *Ulanowski I*. Igbanugo has been admonished three times and suspended twice. Although Igbanugo's most recent misconduct is pursuing a frivolous lawsuit, misconduct for which Ulanowski was disciplined in *Ulanowski I*, Igbanugo's extensive and repeated misconduct leading to the frivolous lawsuit indicates that the appropriate sanction here, as in *Ulanowski II*, is disbarment.

We have also disbarred attorneys for bringing frivolous lawsuits. In *In re Daly*, we disbarred an attorney for harassing banks, public officials, and private individuals with frivolous lawsuits. 189 N.W.2d 176, 180 (Minn. 1971). Here, Igbanugo brought a frivolous lawsuit that, as the district court stated, "[n]o reasonable and competent attorney could believe that he could bring." *Igbanugo v. Minn. Off. of Laws. Pro. Resp.*, No. 21-

CV-0105-PJS-HB, 2021 WL 5216904, Order at \*6 (D. Minn. filed Nov. 9, 2021). He brought the lawsuit solely to burden, harass, and intimidate other attorneys based on personal animosity, and remained undeterred by the district court's ruling, unsuccessfully appealing these frivolous claims to the Eighth Circuit. *See Igbanugo v. Minn. Off. of Laws. Pro. Resp.*, 56 F.4th 561, 564 (8th Cir. 2022).

Our goal when determining appropriate discipline is "to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re McCloud*, 26 N.W.3d 445, 452 (Minn. 2025) (citation omitted) (internal quotation marks omitted). Igbanugo's dishonest and costly misconduct, in light of his lack of remorse and his long history of professional misconduct, demonstrate that he is and remains a threat to the public and the judicial system. Igbanugo should be disbarred.


HENNESY, Justice (dissenting).

I join in the dissent of Justice McKeig.